1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  KATHERINE ELIZABETH ROHRBACHER,       Case No. CV 14-4774 SS

12                   Plaintiff,

13          v.                            **MEMORANDUM DECISION AND ORDER**

14  CAROLYN W. COLVIN, Acting
    Commissioner of the Social
15  Security Administration,

16                   Defendant.

17

18

19                              **I.**

20                         **INTRODUCTION**

21

22       Katherine Elizabeth Rohrbacher ("Plaintiff") seeks review of

23  the final decision of the Commissioner of the Social Security

24  Administration (the "Commissioner" or the "Agency") denying her

25  application for Disability Insurance Benefits ("DIB") and

26  Childhood Disability Benefits.  The parties consented, pursuant

27  to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

28  United States Magistrate Judge.  For the reasons stated below,

the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings consistent with this decision.

## II.

### PROCEDURAL HISTORY

On July 13, 2011, Plaintiff filed an application for Disability Insurance Benefits, claiming that she became disabled on August 14, 2003.[1] (Administrative Record ("AR") 145-48). The Agency denied Plaintiff's application on September 2, 2011, after determining that Plaintiff failed to establish that she was disabled. (AR 78). The Agency denied reconsideration on February 17, 2012. (AR 82).

Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") David J. Agatstein on October 23, 2012 (the "ALJ Hearing"). (AR 45-73). H.C. Alexander III, M.D., and Julian Kivowitz, M.D., testified at the hearing. (AR 30, 53-58, 59-67). Vocational expert ("VE") Martin G. Brodwin also testified. (AR 30, 58-59, 72-73). On December 11, 2012, the ALJ issued an unfavorable decision. (AR 30-40). Plaintiff sought review before the Appeals Council (AR 7-11), which the Council denied on May 14, 2014. (AR 1-3). The Council's determination became the final decision of the

---

[1] According to the Agency, Plaintiff also filed an application for Supplemental Security Income ("SSI") on July 8, 2011. (AR 135). The Agency denied SSI on July 25, 2011, on grounds that Plaintiff's assets exceeded the $2,000.00 maximum allowed.

Commissioner.   (AR 1).   Plaintiff filed the instant action on June 27, 2014.  (Dkt. No. 3).

### III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

1      (3)  Does the claimant's impairment meet or equal one

2           of the specific impairments described in 20

3           C.F.R. Part 404, Subpart P, Appendix 1? If so,

4           the claimant is found disabled. If not, proceed

5           to step four.

6      (4)  Is the claimant capable of performing his past

7           work? If so, the claimant is found not disabled.

8           If not, proceed to step five.

9      (5)  Is the claimant able to do any other work? If

10          not, the claimant is found disabled. If so, the

11          claimant is found not disabled.

12

13 Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,

14 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20

15 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

16

17    The claimant has the burden of proof at steps one through

18 four, and the Commissioner has the burden of proof at step five.

19 Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an

20 affirmative duty to assist the claimant in developing the record

21 at every step of the inquiry. Id. at 954. If, at step four, the

22 claimant meets his burden of establishing an inability to perform

23 past work, the Commissioner must show that the claimant can

24 perform some other work that exists in "significant numbers" in

25 the national economy, taking into account the claimant's residual

26 functional capacity ("RFC"), age, education, and work experience.

27 Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20

28 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do

so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take VE testimony.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since her alleged disability onset date of August 14, 2003.  (AR 33).  At step two, the ALJ found that Plaintiff had the severe physical impairments of systemic lupus erythematosus ("lupus"), hypothyroidism and multiple joint tendinitis.  (Id.).  The ALJ noted that Plaintiff had also been treated for, inter alia, symptoms of depression, cervical dysplasia and dry eye syndrome, but found insufficient evidence of a medically determinable impairment from these conditions.  (AR 34-35).  The ALJ also noted that Plaintiff experienced pain, swelling and tenderness in the wrists and fingers (AR 33-34), and that Plaintiff repeatedly reported suffering from fatigue between 2003 and early 2011.  (Id.).

\\

\\

1     At step three, the ALJ found that Plaintiff did not have an
2   impairment or combination of impairments that met or medically
3   equaled the severity of an impairment listed in 20 C.F.R. Part
4   404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525,
5   and 404.1526).  (AR 35).  The ALJ noted that one of Plaintiff's
6   treating physicians, Dr. Karen R. Ringwald, completed a form
7   "suggesting" that Plaintiff's condition met the listing criteria
8   for lupus.  (Id.; see also 20 C.F.R. Pt. 404, Subpt. P, Appx. 1,
9   listing 14.02).  However, the ALJ credited the contradictory
10  opinion of Dr. Alexander.  (Id.).  The ALJ then found that
11  Plaintiff had the following RFC:

13      [T]hrough the date last insured, [Plaintiff] had the
14      residual functional capacity to perform less than the
15      full range of light work.  [Plaintiff] could have
16      lifted and carried up to 20 pounds occasionally and 10
17      pounds frequently; stood and walked up to 6 hours in
18      an 8-hour day; and sat up to 6 hours in an 8-hour day.
19      She could have engaged in frequent balancing,
20      kneeling, crawling, and climbing ramps and stairs.
21      She could not have engaged in frequent and sustained
22      heavy grasping with the hands.  She could not have
23      climbed ropes, ladders, or scaffolds.  She must also
24      have avoided unprotected heights and exposure to
25      extreme cold.  Thus, she was capable of a limited
26      range of light work as defined in 20 CFR 404.1567(b).

28  (Id.).

1    In making this finding, the ALJ indicated that he had
2    considered all of Plaintiff's symptoms and their consistency with
3    the objective medical and other evidence, as required by 20
4    C.F.R. § 404.1527 and Social Security Rulings ("SSRs") 96-2p,
5    96-5p, 96-6p, and 06-3p. (Id.). The ALJ discussed the opinions
6    of Plaintiff's treating physicians but gave "controlling weight"
7    to Dr. Alexander's opinion. (AR 36-37). The ALJ characterized
8    Dr. Alexander's "longitudinal view" as "consistent with the
9    treating records as a whole." (AR 37). The ALJ particularly
10   noted Dr. Alexander's opinion that Plaintiff's fatigue, limited
11   to "active lupus flare-up" periods, did not preclude work at the
12   determined RFC. (AR 37-38).

13

14   At Step Four, the ALJ found that Plaintiff had no past
15   relevant work because her previous earnings as a waitress and
16   retail clerk were insufficient to show "gainful activity." (AR
17   38). Finally, at step five, the ALJ found that based on
18   Plaintiff's age, educational background, work experience and RFC,
19   she could perform a number of jobs available in significant
20   numbers in the national economy. (AR 39). The ALJ found that
21   Plaintiff retained an RFC to perform a full range of light work
22   with regard to lifting, carrying, standing, walking and sitting.
23   (Id.). Plaintiff was precluded from "frequent and sustained
24   heavy grasping" but could still "engage in many office-type
25   jobs." (Id.). Accordingly, the ALJ found that Plaintiff was not
26   disabled.[2] (AR 40).

27   _____

28   [2] In addition to determining that Plaintiff was not entitled to
     DIB, the ALJ determined that Plaintiff was not disabled prior to

7

**V.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set the decision aside when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097).  "Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id. (citing Jamerson, 112 F.3d at 1066; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1997)).

To determine whether substantial evidence supports a finding, the court must "`consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for the Commissioner's.  Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

---

the time she turned twenty-two years old, as required to be eligible for Childhood Disability Benefits.  (AR 39).

VI.

DISCUSSION

Plaintiff asserts that the ALJ failed to properly credit the opinions of Plaintiff's treating physicians. In particular, Plaintiff asserts that the ALJ failed to specify what weight he accorded the treating physicians' opinions, failed to provide "specific and legitimate" reasons for rejecting these opinions, and failed to credit or acknowledge the treating physicians' findings regarding Plaintiff's functional limitations. (Plaintiff's Memorandum, Dkt. No. 16, at 5-6). The Court agrees with Plaintiff's contentions. Therefore, the ALJ's decision must be reversed and this action remanded for further proceedings.

In evaluating medical evidence, the Agency generally gives the greatest weight to treating physicians' opinions. 20 C.F.R. § 404.1527(c); see also Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) ("Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."). Treating physicians are "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). A treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (quoting 20. C.F.R.

9

1 § 404.1527(c)(2)).   Even if the treating physician's opinion is

2 contradicted by another physician, moreover, the ALJ may not

3 reject it without providing "'specific and legitimate reasons'

4 supported by substantial evidence in the record." <u>Reddick</u>, 157

5 F.3d at 725 (citation omitted).

6

7        Here, Dr. Ringwald, a rheumatologist, treated Plaintiff for

8 more than two years, from December 2004 to July 2007.   (AR 343-

9 451).   In her earliest treatment record, Dr. Ringwald affirmed a

10 previous treating physician's diagnosis of lupus and Raynaud's

11 phenomenon, as well as a history of hypothyroidism "with

12 increasing fatigue."[3]   (AR 343-44).   Over time, Dr. Ringwald also

13 diagnosed "mixed connective tissue disease and chronic fatigue."

14 (AR 450).   In her last progress note, dated April 30, 2007, Dr.

15 Ringwald noted that Plaintiff placed her fatigue symptoms at "10"

16 on a one-to-ten scale.   (AR 446-47).   Although Dr. Ringwald

17 stopped treating Plaintiff in 2007, the Administrative Record

18 contains a retrospective report, dated October 21, 2011, in which

19 Dr. Ringwald opined that Plaintiff previously exhibited all of

20 the "constitutional symptoms or signs" of lupus.   (AR 728-32).

21 Dr. Ringwald concluded that "complete digital swelling and pain"

22 were Plaintiff's primary medical issues, followed by fatigue, and

23 \\

24 _____

25 [3] Raynaud's Phenomenon, which is common in lupus patients, causes
narrowing of blood vessels in the fingers and toes when a patient
26 is cold or under stress.   Symptoms include tingling and
discoloration in these extremities.   <u>See</u> Raynaud's Phenomenon at
27 National Institute of Arthritis and Musculoskeletal and Skin
Diseases       website,       http://www.niams.nih.gov/Health_Info/
28 Raynauds_Phenomenon/raynauds_ff.asp (last visited March 2, 2015).

1  that Plaintiff's hand swelling "could make it difficult to do
2  fine motor skills." (AR 728).

3

4  After Plaintiff moved from Indiana to Maryland in 2007,
5  Plaintiff's treatment continued at the Johns Hopkins Medicine
6  facility. (AR 454-501, 547-56). Her treating physician, Dr.
7  Michelle Petri, noted the same symptoms that Dr. Ringwald had
8  observed. (AR 454). Although Dr. Petri opined that Plaintiff's
9  lupus symptoms did not "fully meet [American College of
10 Rheumatology] criteria," she diagnosed an underlying autoimmune
11 disorder and ordered relevant tests. (AR 456). Dr. Petri also
12 diagnosed undifferentiated connective tissue disease and possible
13 Sjogren syndrome, and noted Plaintiff's history of leukopenia and
14 dactylitis.[4] (Id.). Dr. Petri observed that Plaintiff reported
15 "significant fatigue" (AR 454), and increased Plaintiff's
16 Plaquenil prescription.[5] (AR 457). After Plaintiff moved to
17 California in 2009, her treatment continued at the UCLA Health
18 System facility. (AR 562-989). On September 19, 2012, Dr.
19 Jennifer Grossman again diagnosed lupus and associated fatigue,

20 ──────────────
[4] Sjogren syndrome is an autoimmune disorder causing dryness of
21 the mouth, eyes and other tissues. Leukopenia is a reduced white
   blood cell count and may be a symptom of lupus. See Sjogren
22 syndrome & Leukopenia, MEDLINEPLUS, http://www.nlm.nih.gov/
   medlineplus (and enter terms in search box) (last visited March
23 3, 2015). Dactylitis is a form of joint inflammation causing
   pain, swelling and redness of the fingers and toes. See
24 Psoriatic arthritis, National Library of Medicine website,
   http://ghr.nlm.nih.gov/condition/psoriatic-arthritis (last
25 visited March 3, 2015).
   [5] Plaquenil is prescribed for "discoid or systemic lupus
26 erythematosus and rheumatoid arthritis in patients whose symptoms
   have not improved with other treatments." See MEDLINEPLUS,
27 http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601240.html
   (last visited March 3, 2015).
28

11

1   and noted that fatigue was "one of the hardest [lupus] symptoms
2   to treat." (AR 946).

3

4       The ALJ discussed some of Dr. Ringwald's treatment records,
5   including her 2011 report, and did not expressly reject her
6   assessments. (AR 33-36). The ALJ also noted Dr. Petri's
7   diagnoses without rejecting them. (AR 36-37). The ALJ made no
8   mention of Dr. Grossman, although he generally described
9   Plaintiff's treatment at UCLA, and again did not expressly reject
10  the UCLA treating physicians' opinions. (AR 34, 37).

11

12      However, the ALJ gave "controlling" weight to the opinion of
13  Dr. Alexander, the doctor who testified at the hearing. (AR 37).
14  During his testimony, Dr. Alexander reviewed Plaintiff's symptoms
15  and diagnoses, based on Plaintiff's treatment records, and opined
16  that "I just didn't find that they all added up to a significant
17  level of severity to meet or equal the listing." (AR 55-56).
18  Dr. Alexander did not specify which disability listing he was
19  referring to. (See id.). The ALJ opined that Dr. Alexander's
20  findings were "consistent with the treating records as a whole"
21  and that Dr. Alexander "had the advantage of the longitudinal
22  view in this case." (AR 37). The ALJ credited Dr. Alexander's
23  opinion that Plaintiff's lupus symptoms were not severe because
24  Dr. Alexander "is a board-certified rheumatologist." (AR 35).
25  However, the ALJ did not state why Dr. Alexander possessed a more
26  complete longitudinal view of Plaintiff's case than Plaintiff's
27  \\
28  \\

treating physicians, each a rheumatology specialist who had treated Plaintiff for at least two years.[6]

"When a nontreating physician's opinion contradicts that of the treating physician -- but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician -- the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) (quoting Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). An ALJ's "implicit rejection" of a treating physician's opinion is insufficient to meet the "specific and legitimate" standard. See Salvador v. Sullivan, 917 F.2d 13, 14 (9th Cir. 1990). Moreover, an ALJ may not "avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it." Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (citation omitted). Rather, the ALJ must base his reasons for favoring a nontreating physician's opinion on "substantial evidence in the record." Morgan, 169 F.3d at 600.

Here, Dr. Alexander based his opinions not on his own clinical findings but on a review of Plaintiff's treatment

---

[6] Drs. Ringwald and Grossman are also board-certified rheumatologists. (AR 342, 561). Dr. Petri is Director of the Johns Hopkins Lupus Center. (AR 453). Dr. Alexander testified that Plaintiff had been treated by "a rheumatologist," but did not refer to a specific physician. (AR 55).

1  records from other physicians.    Therefore, the ALJ was required

2  to provide specific and legitimate reasons for discounting the

3  treating physicians' opinions in favor of Dr. Alexander's.   See

4  id.  Although the ALJ did not explicitly reject Drs. Ringwald and

5  Petri's findings, he implicitly rejected them by giving Dr.

6  Alexander's opinion "controlling" weight.   (AR 37).   The ALJ did

7  not provide "specific and legitimate" reasons for rejecting these

8  two physicians' opinions.   Moreover, the ALJ did not discuss Dr.

9  Grossman's assessment at all, except through indirect references

10 to "UCLA records."   (AR 37).   Therefore, the ALJ did not give

11 specific and legitimate reasons, based on substantial evidence in

12 the record, for rejecting Dr. Grossman's opinion.

13

14     In a disability benefits case, "[r]emand for further

15 administrative proceedings is appropriate if enhancement of the

16 record would be useful."   Benecke v. Barnhart, 379 F.3d 587, 593

17 (9th Cir. 2004).   In contrast, "remand for an immediate award of

18 benefits [is appropriate] if (1) the ALJ failed to provide

19 legally sufficient reasons for rejecting the evidence; (2) there

20 are no outstanding issues that must be resolved before a

21 determination of disability can be made; and (3) it is clear from

22 the record that the ALJ would be required to find the claimant

23 disabled were such evidence credited."   Id. (citing Harman v.

24 Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (the "Harman test").

25

26     Here, although the first part of the Harman test is met, the

27 record does not establish that all issues in this action have

28 been resolved or that the ALJ would be required to find Plaintiff

disabled if the treating physicians' opinions were credited. Therefore, this action must be remanded for further proceedings. On remand, the ALJ must develop the record further to determine whether the treating physicians' opinions, if credited, would establish a disability. Assuming that the ALJ has specific and legitimate reasons for discounting the treating physicians' opinions in favor of the medical expert's, the ALJ must expressly identify these reasons and support them with substantial evidence in the record as a whole. Aukland, 257 F.3d at 1037.

**VII.**

**CONCLUSION**

Accordingly, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  March 5, 2015

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**